UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. LARSON,

     Applicant,

v.                            CASE NO. 8:23-cv-808-SDM-SPF

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

Larson applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for attempted armed robbery, for which he was sentenced to twenty years' imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the response. (Docs. 10-2, 10-3) The application asserts seven grounds for relief, each of which is meritless.

## I. **BACKGROUND**[1]

Larson was convicted of attempting to rob a pharmacy in Palm Harbor, Florida. Around 9:15 a.m. on April 11, 2014, the owners of the pharmacy — Hanan and Wagih Mankarious — arrived to open for business. The phone rang and displayed a call from an "unavailable" number. (Respondent's Exhibit 12 at 324) Hanan answered. A "male voice" asked her to "open the back door" for a delivery

_____

[1] This summary of the facts derives from the trial transcript. (Respondent's Exhibit 12)

of oxycodone.  (Respondent's Exhibit 12 at 305)  Hanan explained that the

pharmacy did not "receive deliver[ies] from the back door."  (Respondent's Exhibit

12 at 306)  The caller hung up.

A few seconds later, a man entered the pharmacy wearing a ghillie suit — a

type of camouflage clothing that resembles underbrush.  The man held a handgun

with a laser sight.  He pointed the laser at the owners and ordered them "to the

floor."  (Respondent's Exhibit 12 at 308–09)  Hanan crawled to the front of the

pharmacy, ran outside, and "scream[ed]" for help.  (Respondent's Exhibit 12 at 313)

The man fled the scene.

Wagih called 911.  Law enforcement found a "small laser sight" on the floor

of the pharmacy.  (Respondent's Exhibit 12 at 651)  The owners said that the laser

sight was not on the floor when they arrived that morning.  A forensic technician

extracted a DNA sample from the laser sight.  Law enforcement ran the sample

through CODIS, a national DNA database.  The sample matched Larson's DNA.

The probability that someone else was the "contributor" was "approximately 1 in

450 quintillion in the African-American population, 1 in 1.4 quintillion in the

Caucasian population, and 1 in 1.1 quintillion in the Hispanic population."

(Respondent's Exhibit 12 at 529)

Law enforcement obtained Larson's cell phone records.  On the morning of

the attempted robbery, Larson called the pharmacy six times.  The first call occurred

at 8:51 a.m.  The last call occurred at 9:19 a.m. and lasted approximately one

minute.  During each call, Larson used the *67 feature to conceal his phone number. Also, his cell phone connected to a cell tower one mile from the pharmacy.

Before the attempted robbery, Larson routinely filled prescriptions at the pharmacy.  His last transaction was on April 8, 2014, three days before the incident. Larson never returned to the pharmacy as a customer.  Instead, he filled his prescriptions at a Walmart store until his arrest in September 2014.

Law enforcement interviewed Larson.  He admitted that he had broken into an unoccupied pharmacy several years earlier.  (Respondent's Exhibit 12 at 678, 680) At the time, he was "caught up with the pain pill thing."  (Respondent's Exhibit 12 at 678)  Since then, he had stopped "chasing drugs."  (Respondent's Exhibit 12 at 680)  Law enforcement eventually told Larson that he had left DNA on the laser sight at the pharmacy.  He said he had "no idea" how that happened and denied trying to rob the pharmacy.  (Respondent's Exhibit 12 at 725)

Larson was charged with attempted armed robbery.  (Respondent's Exhibit 2) A jury found him guilty as charged, and he received a sentence of twenty years' imprisonment.  (Respondent's Exhibit 12 at 941–42; Respondent's Exhibit 17)  The appellate court affirmed the conviction without a written opinion.  (Respondent's Exhibit 24)  Larson unsuccessfully moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and Florida Rule of Appellate Procedure 9.141(d). (Respondent's Exhibits 27, 30–32, 35, 40)  This federal habeas application followed. (Doc. 1)

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998).  Section 2254(d), which creates a highly deferential standard for federal court

review of a state-court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power
> of a federal habeas court to grant a state prisoner's
> application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under §
> 2254(d)(1), the writ may issue only if one of the following
> two conditions is satisfied — the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal
> law, as determined by the Supreme Court of the United
> States."  Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially

indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of ' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "[AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In *per curiam* decisions without written opinions, the appellate court affirmed Larson's conviction and affirmed the denial of his Rule 3.850 motion for post-conviction relief. The appellate court's *per curiam* decisions warrant deference under

Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state-court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Larson bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but

not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Larson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Larson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Larson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Larson cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *See Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001).

**Ground One:**

Larson argues that trial counsel provided ineffective assistance by "failing to advise him to accept" the trial court's "ten-year plea offer." (Doc. 1 at 12)  Before *voir dire*, the court asked the parties about the "possibility of a plea." (Respondent's Exhibit 12 at 10)  The court explained that "without negotiation with the state," Larson faced a mandatory minimum of ten years' imprisonment.[2] (Respondent's Exhibit 12 at 10)  Counsel stated that the prosecution had rejected Larson's offers of twenty-four months' imprisonment and five years' imprisonment. (Respondent's

---

[2] In Florida, a defendant who "actually possess[es]" a firearm during an attempted robbery faces "a ten-year mandatory minimum sentence." *Grant v. State*, 138 So. 3d 1079, 1086 (Fla. 4th DCA 2014).

Exhibit 12 at 10–11)  The court asked Larson whether he intended to "make any other offers."  (Respondent's Exhibit 12 at 11)  He said no.  (Respondent's Exhibit 12 at 11)

The court explained that "sometimes," a defendant "goes to trial and they wind up getting life, and then they go, 'Man, I wish I would have known I could have taken the ten back at the time when I was getting ready to go to trial on the case.'"  (Respondent's Exhibit 12 at 11)  Larson said he understood "all of that." (Respondent's Exhibit 12 at 11–12)  The court responded, "I mean I could — there's no way I could go less than ten.  But if you offered ten, I could consider that offer." (Respondent's Exhibit 12 at 12)  Larson confirmed that he intended to "proceed to trial."[3]  (Respondent's Exhibit 12 at 12)

Based on this colloquy, Larson contends that the court made a "favorable ten-year plea offer."  (Doc. 1 at 12)  According to Larson, counsel should have "inform[ed] him to take the plea with a proper explanation."  (Doc. 1 at 21)  Had counsel done so, Larson allegedly "would have taken the plea" and received a sentence of ten years' imprisonment.  (Doc. 1 at 20)

The post-conviction court rejected this claim.  (Respondent's Exhibit 35 at 10) According to the court, "the record refute[d] [Larson's] claim that [the trial court] extended a ten-year plea offer."  (Respondent's Exhibit 35 at 10)  Instead, the trial court "merely invited [Larson] to make an offer to the court, which the court would

---

[3] In Florida circuit court, "judicial participation in the plea-bargaining process is permissible" if the judge observes certain "limitations and safeguards." *Alvarez-Hernandez v. State*, 319 So. 3d 121, 125 (Fla. 3d DCA 2021).

consider." (Respondent's Exhibit 35 at 11)  Thus, "counsel could not be deficient for

advising [Larson] regarding acceptance of the non-existent offer." (Respondent's

Exhibit 35 at 10)

This ruling was reasonable.  "If a plea bargain has been offered, a defendant

has the right to effective assistance of counsel in considering whether to accept" the

offer. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).  But "[i]f no plea offer is made," the

issue of "effective assistance of counsel in considering whether to accept [an offer]

simply does not arise." *Lafler*, 566 U.S. at 168.  Contrary to Larson's assertion, the

trial court did not make a "ten-year plea offer." (Doc. 1 at 12)  The court stated that

if Larson "offered ten, *I could consider that offer*." (Respondent's Exhibit 12 at 12

(emphasis added))  "Plea bargains are contracts and are subject to the rules of

contract law." *Motes v. State*, 129 So. 3d 446, 447 (Fla. 1st DCA 2013).  Under those

rules, "[a]n invitation to submit an offer is not itself an offer." *Ferrero Const. Co. v.

Dennis Rourke Corp.*, 536 A.2d 1137, 1145 (Md. 1988).  Here, the court "indicated a

willingness to entertain a plea" but never made an "actual offer." *Gordon v. State*, 286

So. 3d 833, 834 (Fla. 1st DCA 2019).  Thus, a reasonable jurist could agree that

counsel was not deficient for failing to advise Larson to accept a "non-existent offer."

(Respondent's Exhibit 35 at 10; *see also Campbell v. Sec'y, Fla. Dep't of Corr.*, 2023 WL

3862150, at *1 (11th Cir. Feb. 17, 2023) (rejecting ineffective assistance claim

because petitioner "offered nothing to establish that the state post-conviction court

inaccurately found that no plea offer was made"))

**Grounds Two and Three:**

Larson faults trial counsel for "allowing the jury to hear collateral-crime evidence that [he] had committed a burglary of a pharmacy." (Doc. 1 at 22)  During his interrogation, Larson admitted that he had broken into an unoccupied pharmacy several years earlier while "caught up with the pain pill thing." (Respondent's Exhibit 12 at 678, 680)  Before trial, the court ruled that the prosecution could introduce "whatever [Larson] said in the interview relative to his prior problem . . . with pills and that he's got it under control." (Respondent's Exhibit 6 at 13)  But the court barred the prosecution from "get[ting] into any of the other collateral stuff relative to the burglary seven years ago." (Respondent's Exhibit 6 at 15)  Larson argues that counsel "secured a favorable ruling excluding any mention of the burglary in the . . . recorded interrogation, yet failed to object" when the jury heard Larson's "admission[ ]" to the burglary. (Doc. 1 at 22)  Alternatively, if the ruling did not bar the burglary evidence, Larson contends that counsel failed "to meaningfully argue for the exclusion of " the evidence during the pre-trial hearing.[4] (Doc. 1 at 33)

The post-conviction court held that Larson could show no prejudice "because there [was] no reasonable probability that [his] admission [to the prior burglary] contributed to the outcome of the trial." (Respondent's Exhibit 35 at 5; *see also* Respondent's Exhibit 35 at 8)  The court explained that "significant evidence link[ed]

---

[4] Larson further contends that counsel should have "request[ed] a written order" memorializing the pre-trial ruling. (Doc. 1 at 32)

[Larson] to the attempted robbery." (Respondent's Exhibit 35 at 8)  First, Larson's "cell phone was used to make several calls to the pharmacy on the morning of the attempted robbery[,] including the blocked call moments before the armed assailant entered the pharmacy." (Respondent's Exhibit 35 at 8)  Second, "cell site records established that the calls were routed through a tower near the pharmacy[,] and subsequent incoming and outgoing calls were consistent with the phone moving away from the pharmacy to [Larson's] girlfriend's neighborhood." (Respondent's Exhibit 35 at 8)  Third, the laser sight that the suspect "dropped" at the pharmacy "contained [Larson's] DNA." (Respondent's Exhibit 35 at 8)  Fourth, Larson "had almost two dozen prescriptions filled [at the pharmacy], including up to three days before the attempted robbery, [but] he never returned after the attempted robbery." (Respondent's Exhibit 35 at 5)  Given "the evidence presented," the court held that "any alleged error in admitting [Larson's] statement about his prior record was not so egregious as to undermine confidence in the outcome of the trial." (Respondent's Exhibit 35 at 6)

The post-conviction court reasonably found no prejudice. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "Applying AEDPA to *Strickland*'s prejudice standard, [the district court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Larson] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Larson cannot meet this demanding standard. Even apart from the prior burglary, the prosecution presented "substantial evidence" of Larson's guilt. *Fugate v. Head*, 261 F.3d 1206, 1224 (11th Cir. 2001); *see also McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) ("[T]he other substantial evidence of [petitioner's] guilt negates any possibility of prejudice resulting from his attorney's [allegedly deficient performance]."). The post-conviction court accurately summarized the evidence, which proved beyond a reasonable doubt that Larson was the robber. Given the strength of the prosecution's case, the prior burglary "had an isolated, trivial effect" on "the entire evidentiary picture." *Strickland*, 466 U.S. at 696. Because "some fairminded jurists could agree" with the finding of no prejudice, "federal habeas relief must be denied."[5] *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011); *see*

---

[5] Larson briefly contends that appellate counsel was deficient for failing to challenge the admission of the prior burglary. (Doc. 1 at 22) As explained above, the prosecution presented overwhelming evidence of Larson's guilt. Thus, any error in admitting the prior burglary was harmless. *See Steward v. State*, 619 So. 2d 394, 397 (Fla. 1st DCA 1993) ("[T]he erroneous admission of . . . collateral crimes evidence is subject to . . . harmless-error analysis."). Appellate counsel "cannot be deficient for failing to raise a meritless claim." *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

*also Thomas v. Muniz*, 809 F. App'x 376, 378–79 (9th Cir. 2020) (state court reasonably found no prejudice from failure to object to "prior bad acts" because prosecution presented "overwhelming evidence condemning [petitioner]").

**Ground Four:**

Larson argues that trial counsel should have moved to suppress his "recorded interrogation." (Doc. 1 at 41) According to Larson, his *Miranda*[6] waiver was involuntary because law enforcement incorrectly said he was "not in trouble or anything" before reading the *Miranda* warnings. (Doc. 1 at 41) The post-conviction court found no prejudice because Larson "fail[ed] to show that suppression of his statements to police would have changed the outcome of the trial." (Respondent's Exhibit 35 at 16) As the court noted, Larson "did not confess to committing the attempted robbery." (Respondent's Exhibit 35 at 14) Larson admitted to breaking into an unoccupied pharmacy several years earlier, but the post-conviction court found no prejudice because the prosecution presented "significant evidence linking [Larson] to the attempted robbery." (Respondent's Exhibit 35 at 16)

Larson cannot show that this ruling "was so obviously wrong that [the] error lies beyond any possibility for fairminded disagreement." *Mungin*, 89 F.4th at 1317. To prove prejudice, Larson must establish "a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Cir. 2006) (noting that, "[t]o obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a [ ] motion to suppress," a petitioner must show, among other things, "a reasonable probability that the verdict would have been different absent the excludable evidence").

Larson cannot make the required showing. As the post-conviction court explained, Larson never confessed to the attempted robbery. And the "other substantial evidence of [his] guilt negates any possibility of prejudice resulting from" his references to the prior burglary. *McCoy*, 953 F.2d at 1262. Because Larson cannot show a "reasonable probability that [he] would have been acquitted if the jury had not heard [his] statements to [the] police," the post-conviction court correctly found no prejudice. *Mitchell v. Sec'y, Fla. Dep't of Corr.*, 2024 WL 1208979, at *3 (11th Cir. Mar. 21, 2024); *see also Campbell v. Sec'y, Dep't of Corr.*, 2018 WL 929763, at *6 (M.D. Fla. Feb. 16, 2018) ("[E]ven if counsel had successfully moved to suppress [p]etitioner's videotaped statements, [p]etitioner has not demonstrated a reasonable probability that the outcome of the trial would have been different.").

**Ground Five:**

Larson argues that trial counsel should have moved for a mistrial when the prosecution "elicited testimony about guns" in his girlfriend's house. (Doc. 1 at 54) Larson lived in the house at the time of the attempted robbery. Before *voir dire*, the trial court excluded any evidence that Larson's girlfriend kept firearms in the house. (Respondent's Exhibit 12 at 22–23) At trial, she testified that she kept firearms in a locked "gun safe" in the house until April 22, 2014 — almost two weeks after the

attempted robbery.  (Respondent's Exhibit 12 at 624–26)  She claimed, however, that she "never" saw Larson carry or even "look[ ]" at the firearms.  (Respondent's Exhibit 12 at 626)

Counsel told the court that he was "seriously debating whether there should be a motion for mistrial" based on the "discussion of guns."  (Respondent's Exhibit 12 at 629)  The court said, "I don't know what was prejudicial.  You disarmed it pretty much.  It's locked in the gun safe.  He didn't have any access to [the firearms] and never saw them."  (Respondent's Exhibit 12 at 629)  Counsel ultimately chose not to move for a mistrial.  (Respondent's Exhibit 12 at 630)

The post-conviction court held that counsel was not deficient for failing to move for a mistrial.  (Respondent's Exhibit 35 at 18)  The court explained that under Florida law, "a mistrial is a drastic remedy" that "should only be granted when an error is so prejudicial that it vitiates the entire trial, such that the defendant is deprived of a fair proceeding."  (Respondent's Exhibit 35 at 17)  The court found that "the issue did not vitiate the entire trial" because "defense counsel elicited favorable testimony on cross-examination that [Larson's girlfriend] kept the firearms in a locked safe and never saw [Larson] handle them."  (Respondent's Exhibit 35 at 18)  Therefore, Larson failed "to show that trial counsel would have been able to establish entitlement to a mistrial."  (Respondent's Exhibit 35 at 18)

This ruling was reasonable.  "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective assistance]

claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017).  The post-conviction court found that a motion for mistrial would have failed because the challenged testimony "did not vitiate the entire trial."  (Respondent's Exhibit 35 at 18)  "Whether a mistrial would have been granted based on the [allegedly improper testimony] is a matter of Florida law."  *Sampson v. Sec'y, Dep't of Corr.*, 2023 WL 5573958, at *11 (M.D. Fla. Aug. 29, 2023).  Therefore, the post-conviction court "already has told us how the issue[ ] would have been resolved under Florida state law had [counsel] done what [Larson] argues he should have done."  *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005).

Because the post-conviction court "authoritatively decided as a matter of [Florida] law" that a motion for mistrial would have failed, the remainder of the analysis is straightforward.  *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024).  "A lawyer cannot be deficient for failing to raise a meritless claim."  *Freeman*, 536 F.3d at 1233.  As a result, the post-conviction court reasonably concluded that counsel was not deficient for failing to seek a mistrial.  *See McGuire v. Sec'y, Dep't of Corr.*, 2023 WL 6196858, at *21 (M.D. Fla. Sept. 22, 2023) (federal habeas court was "bound by [the state court's] determination" that "a motion for a mistrial would have been denied").

**Ground Six:**

Larson argues that his conviction by a six-person jury violated the federal constitution.  (Doc. 1 at 58)  According to Larson, the constitution required a twelve-person jury.  (Doc. 1 at 59)  This argument lacks merit.  A six-person jury is

constitutionally permissible in a non-capital case.[7]  *See Williams v. Florida*, 399 U.S.

78, 103 (1970) ("[P]etitioner's Sixth Amendment rights, as applied to the States

through the Fourteenth Amendment, were not violated by Florida's decision to

provide a six-man rather than a 12-man jury."); *United States v. Stewart*, 700 F.2d 702,

704 (11th Cir. 1983) ("[A] twelve-person jury is not a constitutional requirement.").

**Ground Seven:**

Lastly, Larson contends that the "cumulative prejudicial effect" of counsel's

alleged errors "deprived [him] of his right to a fair trial." (Doc. 1 at 59)  "Under the

cumulative error doctrine, a sufficient agglomeration of otherwise harmless or

nonreversible errors can warrant reversal if their aggregate effect is to deprive the

defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284

(11th Cir. 2014).  A cumulative error claim "must fail," however, where none of the

"individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d

1117, 1132 (11th Cir. 2012).  Because each individual claim of error lacks merit,

Larson cannot show cumulative prejudicial effect.

## IV. CONCLUSION

Larson's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The

clerk must enter a judgment against Larson and **CLOSE** this case.

---

[7] The respondent argues that ground six is procedurally defaulted, but "a federal court may
skip over the procedural default analysis if a claim would fail on the merits in any event." *Dallas v.
Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020).

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Larson fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Larson must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 3, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE